HARRIS, Judge.
Doreen Williamson and Nikki Lynn Stone worked at a Bally Health Club managed by Fred Khalilian. Paul Mejias is the husband of Doreen Williamson. Based on a complaint by Stone and Williamson, the police arrested Khaliliaris father for allegedly grabbing Stone’s breast. That same evening, Stone, Williamson and Mejias talked with Khalilian and told him that the charges against his father would be dropped if he paid each woman $12,000. After this conversation, Khalilian telephoned appellees to further discuss their demand and recorded the conversation. Then Khalilian reported the extortion attempt to the State Attorney’s Office.
In the investigation of the extortion attempt, the officers listened to the recorded *1244 conversation between Khalilian and appel-lees. Based on his investigation, Officer Brown authorized recording subsequent conversations. And even though the officer testified at the suppression hearing that recording the subsequent telephone calls to appellees would have been authorized in any event as a part of a normal investigation even had he not listened to the prior recording, the trial court suppressed the recorded conversations authorized by the police. The court determined that the properly authorized recordings were “evidence derived” from the earlier conversation recorded by Khalilian which the court found to be illegal under chapter 934, Florida Statutes. The State has appealed the suppression; we reverse.
Section 934.06 makes inadmissible only “the contents of such communication and ... evidence derived therefrom.” The statute simply does not prohibit the introduction of evidence obtained from a source other than the contents of the improperly recorded conversation even though it may be the same evidence discussed in the improperly recorded conversation. Certainly there was no prohibition against Khalilian advising the State Attorney’s Office of the initial, unrecorded extortion attempt. Nor does section 934.06 prevent the disclosure that a telephone conversation between Khalilian and appellees took place after the initial extortion attempt. It is only the contents and evidence derived from the contents of an illegally recorded conversation that are inadmissible.
The trial court was .of the opinion that if the subsequent properly recorded conversations were in any way connected to the initial improperly recorded conversation then they must be suppressed. The court apparently found this connection to be that Khalili-an’s credibility was bolstered by the earlier recording. But although the credibility of the complaining party may be extremely important in determining whether a crime was committed, it should have little or no relevancy in determining whether to investigate the charge. This is because even a paranoid may have enemies and even habitual liars may be extorted. We think a better interpretation of the “evidence derived therefrom” provision is that suppression of the recordings of subsequent authorized conversations •is- required only if the contents of the improperly recorded conversation was the basis for authorizing such subsequent recordings ánd not merely one of several factors that bolstered the complainant’s credibility. The officer who authorized the recording of the subsequent conversations testified:
A. Mr. Khalilian explained that his father had been arrested by the Altamonte Springs Police Department as a result of a complaint filed by two female victims who were acquaintances of his, and as a result of that, he had a meeting and conversations with those victims and two other persons, at which time they demanded a total of twenty-four thousand dollars in order to have the charges dropped against his father.
Q. And did he relate to you anything about making a tape recording of a later conversation?
A. Yes, he did.
Q. What did he say about that?
A. He stated that subsequent to his initial meeting, a conversation with the suspect in the case, he had created a tape recording of a telephone conversation done to document what was said and, he said, out of fear of the parties involved.
Q. Okay. Now, did you listen to the tape recording?
A. Yes, I did.
Q. Had you not listened to that tape recording, would you have still authorized him to do tape recordings of further conversations of him and these other persons? A. Yes, I would.
Q. Has that been done by you? ' Have you authorized other persons who come in and say that people are making threats or trying to get someone to commit a crime, do you authorize the recordings or do you schedule tape recordings?
A. Yes, I do, it’s one of the investigative tools we use.
Thus, even though the officer admitted on cross examination that the “presence of that first recorded conversation” bolstered Khalilian’s credibility (the officer was not *1245 even asked whether he relied on the contents of the conversation), he would have independently authorized the subsequent recordings. The officer testified that Khalilian’s credibility was bolstered not only by his having the tape of the original telephone conversation, but also by the fact that his father was in jail for sexually abusing a woman and that on Khalilian’s pager was a message to him from one of the purported witnesses to his father’s alleged misconduct. Under the circumstances of this case, it would have been irresponsible if the officer had not authorized the subsequent recordings even if the original telephone conversation had not been taped. Whether we consider the authorized recordings as inevitable discovery or as discovery not prohibited by section 934.06 because the authorization was not based on the contents of the improperly recorded conversation, we find the trial court was in error in suppressing the subsequent tapes and reverse.
REVERSED and REMANDED for further action consistent with this opinion.
GRIFFIN, C.J., concurs.
COBB, J., concurs specially with opinion.